UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULRAHMAN MUHAMMAD SALEH NASSER, et al.,  )<br>)<br>Petitioners/Plaintiffs,  )<br>)<br>v.  )<br>)<br>GEORGE W. BUSH, et al.,  )<br>)<br>)<br>Respondents/Defendants.  ) | Civ. A. No. 07-1710 (RBW) |

**RESPONDENTS' OPPOSITION TO PETITIONERS'
EMERGENCY MOTION TO ENTER PROTECTIVE ORDER**

Respondents hereby oppose petitioners' "emergency" motion for entry of the November 8, 2004 amended protective order from In re Guantanamo Detainee Cases (dkt. no. 9). Petitioners' motion is not an emergency of any kind, and the relief they seek should be denied because this Court lacks jurisdiction over this case. See Boumediene v. Bush, 476 F.3d 981 (D.C. Cir.), cert. granted, 127 S. Ct. 1478 (2007). Moreover, the relief that petitioners request is unwarranted because counsel are free to obtain access to their client through a parallel Detainee Treatment Act case they have properly filed in the Court of Appeals. While petitioners quibble with certain terms of the protective order that the Court of Appeals has approved, their complaints are unfounded, more properly addressed to the Court of Appeals, and, in any event, do not provide an adequate basis for this Court to exercise jurisdiction it does not have, to enter a protective order different from that which our Court of Appeals has seen fit to approve.

**BACKGROUND**

Petitioners[1] filed this habeas corpus action on September 25, 2007, almost two years after the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, § 1005(e)(2), 119 Stat. 2680, made review in the United States Court of Appeals for the District of Columbia Circuit the exclusive procedure for challenging the detention of aliens detained at Guantanamo Bay determined by Combatant Status Review Tribunals to be enemy combatants; almost one year after the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600; and seven months after the D.C. Circuit gave effect to this plain congressional intent by holding that the district court lacked jurisdiction over a habeas corpus case like this one, see Boumediene, 476 F.3d 981.

After having been filed in the wrong court notwithstanding the direction from Congress and the D.C. Circuit, this case then lay dormant for more than six months. Meanwhile, petitioners, represented by the same counsel, filed a parallel petition for review with the D.C. Circuit under the DTA on January 22, 2008. See Nasser v. Gates, No. 08-1042 (D.C. Cir.) (copy of petition attached hereto as Ex. A). That case challenges petitioner's detention as an enemy combatant pursuant to a decision by a Combatant Status Review Tribunal.[2] In other DTA cases, the D.C. Circuit has approved, after substantial briefing and argument, a protective order for DTA cases that provides for counsel access, see Bismullah v. Gates, 501 F.3d 178 (D.C. Cir.

---

[1] There are two petitioners in this action, the Guantanamo detainee and his putative next friend. When "petitioner" is used in the singular herein, it refers to the Guantanamo detainee petitioner.

[2] Petitioners' emergency motion inexplicably omits any mention of their parallel case pending in the D.C. Circuit.

2007), cert. on other issues pending (No. 07-1052), and respondents would consent to entry of such a protective order in petitioner's DTA case and the resulting access it would provide.[3] However, as of the date this brief is filed, petitioners have not sought entry of the protective order in their parallel DTA case.

After six months of inactivity in this case, on March 31, 2008 petitioners filed the instant "emergency" motion for entry of a protective order in this case, with terms different from those the D.C. Circuit has approved for entry in DTA cases. The so-called emergency is that counsel are planning to visit Guantanamo in May to meet with other clients, and they would like to include a meeting with petitioner in that visit. Petitioners acknowledge that they could obtain such access through entry of a consented protective order in their pending DTA case, but have addressed their motion to this Court instead because they consider the D.C. Circuit's version of the protective order inadequate.

## **ARGUMENT**

**I.     PETITIONERS' MOTION SHOULD BE DENIED BECAUSE THE COURT LACKS JURISDICTION**

Petitioners' request for entry of the habeas protective order should be denied because the Court lacks jurisdiction to grant the requested relief. On October 17, 2006, through the MCA,

---

[3] Petitioners state in their motion that "the government is willing to consent to entry of a temporary protective order under the Detainee Treatment Act." Petrs' Mot. at 2. While respondents do not ascribe to petitioners' counsel any intent to mislead, this language, combined with petitioners' failure to mention that they have a parallel DTA case pending, could be construed as suggesting that respondents have indicated that they would consent to entry of the DTA protective order in this case. To avoid any confusion, respondents emphasize that what they have offered to consent to is entry of the DTA protective order in petitioners' pending DTA case. Further, respondents' consent in this regard is not limited to a "temporary" protective order; respondents are willing to consent to full entry of the DTA protective order in the DTA case.

3

Congress added a new subsection (e) to the habeas statute, 28 U.S.C. § 2241, to provide that "[n]o court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the United States determined to be enemy combatants or awaiting such a status determination, or (2) any other action "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of an alien who is or was so detained, except for the exclusive review mechanism in the Court of Appeals created under the DTA for addressing the validity of the detention of such an alien.[4]  See MCA § 7(a).  This new amendment to § 2241 took effect on the date of enactment and applies specifically "to all cases, without exception, pending on or after the date of the enactment of this Act which relates to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001."  Id. § 7(b).[5]

---

[4] See DTA § 1005(e)(2)-(3) (as amended by MCA §§ 9-10).  Section 1005(e)(2) of the DTA, as amended, states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.

[5] Even prior to enactment of the MCA, the DTA invested the Court of Appeals with the same "exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant." See DTA § 1005(e)(2)-(3).  This investment of exclusive jurisdiction in the Court of Appeals, independent of the MCA, deprived the district court of jurisdiction in cases challenging the detention of enemy combatants.  See, e.g., Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-09 (1994) ("exclusive" jurisdiction under federal Mine Act precludes assertion of district court jurisdiction); Laing v. Ashcroft, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily reserved for instances in which no other judicial remedy is available"); Telecomms. Research & Action Ctr. v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals); cf. id. at 77 ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power.").  In any event, with the enactment of the MCA, as the D.C. Circuit made clear in Boumediene, district court jurisdiction

On February 20, 2007, the Court of Appeals held in Boumediene that the MCA plainly applies to all cases filed by aliens detained as enemy combatants and withdraws all District Court jurisdiction over such cases, including both habeas and non-habeas claims. See 476 F.3d at 986-88 & n.1; id. at 994 ("Federal courts have no jurisdiction in these cases."). The Court of Appeals also held that the withdrawal of habeas jurisdiction, even over cases already pending at the time of enactment of the MCA,[6] did not violate the Suspension Clause because the alien detainees held at Guantanamo have no constitutional rights and because the constitutional right to seek habeas review does not extend to aliens held at Guantanamo. See id. at 988-94. Consequently, the Court of Appeals (1) ordered that the district courts' decisions on appeal be vacated and (2) dismissed the cases on appeal for lack of jurisdiction. See id. at 994.

The Supreme Court granted certiorari in Boumediene on June 29, 2007, 127 S. Ct. 3078, and heard argument on December 5, 2007. However, until the Supreme Court issues its decision, the law of this Circuit is that under the MCA, federal district courts do not have jurisdiction over cases brought by aliens at Guantanamo Bay detained as enemy combatants. Indeed, the Court of Appeals recently emphasized that Boumediene "remains the law of this Circuit" and is binding precedent unless and until overturned. See Rasul v. Myers, 512 F.3d 644, 665 (D.C. Cir. 2008) (applying Boumediene's holding that aliens without presence or property in the United States lack constitutional rights).[7] The Court of Appeals explained:

---

has been unambiguously withdrawn.

[6] As noted above, this case was not filed until well after enactment of the MCA.

[7] See also Maxwell v. Snow, 409 F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to follow circuit precedent until it is overruled either by an en banc court or the Supreme Court"); Ayuda, Inc. v. Thornburgh, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring)

>Boumediene is currently before the Supreme Court on certiorari review. Nevertheless, we must follow Circuit precedent until and unless it is altered by our own en banc review or by the High Court. See United States v. Carson, 455 F.3d 336, 384 n.43 (D.C. Cir. 2006) ("[W]e are, of course, bound to follow circuit precedent absent contrary authority from an en banc court or the Supreme Court." (citing Brewster v. Comm'r, 607 F.2d 1369, 1373 (D.C. Cir. 1979)).

Id. at 665 n.15. Thus, petitioners' motion should be denied because under Circuit precedent this Court lacks jurisdiction.[8]

---

("Once [an] opinion [is] released it [becomes] the law of this circuit."); Vo Van Chau v. U.S. Dep't of State, 891 F. Supp. 650, 654 (D.D.C. 1995) (holding that the district court was bound by the principle of stare decisis to abide by a Court of Appeals decision even though the Court of Appeals had not yet issued its mandate and even though the mandate was stayed during the pendency of a petition for rehearing). The law-of-the-circuit doctrine renders the decision of a panel of circuit judges binding on all other panels within that circuit, LaShawn A. v. Barry, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc), and also on district courts within that circuit. And, "[t]he requirement that jurisdiction be established as a threshold matter ... is 'inflexible and without exception." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999) (internal quotation marks and citations omitted).

[8] Petitioners do not cite or rely on the Court of Appeals' recent decision in Belbacha v. Bush, No. 07-5258, --- F.3d ---, 2008 WL 680637 (D.C. Cir. Mar. 14, 2008), and, in any event, that case does not support their motion. In Belbacha, the Court of Appeals reaffirmed the principle that "[a] decision of this court is binding upon a later panel and upon the district court," but held that "when the Supreme Court grants certiorari to review this court's determination that the district court lacks jurisdiction, a court can, pursuant to the All Writs Act, 28 U.S.C. § 1651, and during the pendency of the Supreme Court's review, act to preserve the status quo in other cases raising the same jurisdictional issue if a party satisfies the criteria for issuing a preliminary injunction." Id. at *3. This narrow holding came in the context of a request by a detainee to preserve the status quo by barring a transfer to a foreign country that indisputably would have divested any putative jurisdiction of the district court. Here, in contrast, petitioners are attempting not to preserve the status quo, but to change it by entry of a protective order establishing attorney access to petitioner that did not previously exist, and on terms different from those approved by the Court of Appeals. Moreover, petitioners do not invoke the All Writs Act, and have not even attempted to argue that their motion satisfies the criteria for issuing a preliminary injunction.

6

II.   **PETITIONERS' REQUEST FOR ENTRY OF A PROTECTIVE ORDER IN THIS CASE SHOULD BE DENIED BECAUSE COUNSEL MAY OBTAIN ACCESS TO THEIR CLIENT THROUGH THEIR PENDING DTA CASE**

Even if this Court were to conclude that it has some limited jurisdiction to grant the relief requested, that relief should be denied because petitioners have an alternative remedy readily available to them. As noted above, petitioners have already filed a parallel DTA case, which is currently pending and proceeding apace in the D.C. Circuit. See Nasser v. Gates, No. 08-1042 (D.C. Cir.). Counsel can have access to petitioner through the regime established by the Court of Appeals for DTA cases, just as many counsel for Guantanamo detainees already have done.

Petitioners explain that they have forgone this alternative remedy because they consider the DTA protective order inadequate for two reasons: they believe it limits them to two attorney-client visits, and they consider its provisions for legal mail unduly constrictive. See Petrs' Mot. at 3-4. Putting aside the inherent unsoundness of petitioners' invitation to this Court to sit in judgment of the adequacy of a protective order that a three-judge panel of our Court of Appeals adopted following substantial briefing and argument, the alleged deficiencies are specious and makeweight. And, certainly, neither of them presents an "emergency."

Petitioners' concern that the DTA protective order limits them to two attorney-client visits appears to be a simple misunderstanding, and, properly understood, the complained-of provision is virtually the same as its counterpart in the In re Guantanamo Detainee Cases version of the protective order petitioners favor. Petitioners assert that "[i]f the DTA protective order is applied to this case, Petitioner Nasser would have access to counsel during a total of two meetings. . . . And once counsel and Petitioner Nasser have met twice . . . all contact regarding this case would cease under the DTA protective order." Petrs' Mot. at 4. This is simply wrong.

7

The relevant language of the DTA protective order provides: "<u>Prospective</u> counsel for a Detainee may have up to two visits with a Detainee <u>to obtain his authorization</u> to seek review of the CSRT's determination of his status." DTA Protective Order ¶ 5.F, <u>reprinted in</u> <u>Bismullah</u>, 501 F.3d at 199 (emphasis added). This language is clear that the two-visit limitation applies only to visits <u>before</u> petitioner has affirmed that he desires to be represented by counsel and pursue a DTA case; once petitioner has signed on to the representation and litigation, the limitation has no further effect.[9]  <u>See also</u> <u>Bismullah</u>, 501 F.3d at 190-91 (explaining the basis and scope of the two-visit limitation).

In any event, and perhaps more importantly, petitioners apparently overlook that the version of the protective order <u>they</u> are asking this Court to enter contains the same limitation, only in slightly different words. <u>See</u> Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, ¶ III.C.2, <u>reprinted in</u> <u>In re Guantanamo Detainee Cases</u>, 344 F. Supp. 2d 174, 185 (D.D.C. 2004) ("Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee."). Thus, the two-visit provision, read according to its plain terms, does not render the DTA protective order inadequate as petitioners claim.

---

[9] To accept petitioners' argument that the two-visit provision constrains them would require the Court to assume that petitioner will not ratify the DTA petition that has been filed on his behalf, and that the petition essentially has been filed against his wishes. In any event, it is axiomatic that this issue does not present an "emergency," as it will not even ripen, if at all, until two visits from now, and then, only if petitioner declines to be represented by counsel and to authorize the litigation they have brought on his behalf.

Petitioners' other argument is that the DTA protective order's definition of legal mail is too narrow.[10] Here again, petitioners' complaint is based on hyperbole and vague speculation. They complain that the D.C. Circuit's definition of legal mail "precludes Petitioner from receiving <u>any legal mail</u> about this habeas corpus case" and "bars counsel from addressing substantive issues affecting Petitioner Nasser's habeas case." Petrs' Mot. at 3 (emphasis in original). However, there is not some vast gulf between the type of information that would be relevant to petitioner's DTA claims and the type of information that would be relevant to any habeas claims, assuming <u>arguendo</u> there is jurisdiction over the latter. The DTA protective order permits legal mail regarding "events leading up to the capture of the Detainee," "events occurring between such Detainee's capture and" his CSRT hearing, and "the conduct of the CSRT proceeding relating to such Detainee." DTA Protective Order ¶ 3.I, <u>reprinted in</u> <u>Bismullah</u>, 501 F.3d at 196. These three categories would seem to be virtually coextensive with what could conceivably be relevant to petitioners' habeas claims attacking the legality of his detention.[11] In

---

[10] It is worth noting that this rationale is divorced from the alleged "emergency" prompting petitioners' motion, which is that they need entry of the protective order so that counsel can meet with petitioner in person in May. Petitioners concede that the legal mail provision in "the protective order does not limit the content of material discussed in visits" such as the one they have planned for May. Petrs' Mot. at 3.

[11] Petitioners vaguely state that "[h]abeas corpus review implicates other issues, such as Petitioner's treatment at Guantanamo and the unjust nature of his lengthy detention," which "require further factual development and litigation that is not permitted through legal mail under the DTA protective order." Petrs' Mem. at 3. However, petitioners cite no authority supporting their conception of the "other issues" besides a test of the legality of detention that are supposedly encompassed by habeas corpus, and the weight of authority holds that claims challenging conditions during detention, rather than the legality of the detention itself, are not cognizable through habeas. <u>See</u>, e.g., <u>Cochran v. Buss</u>, 381 F.3d 637, 639 (7th Cir. 2004); <u>see also</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 526 n.6 (1979) (reserving question). In any event, petitioners ignore that the DTA protective order's definition of legal mail permits discussion of "events occurring between such Detainee's capture and any hearing before a [CSRT] relating to such

any event, if petitioners have a genuine objection to the DTA protective order's definition of legal mail, they should address that argument to the Court of Appeals in their pending DTA case.

Finally, petitioners state that a protective order should be entered in this case now because "Respondents and many judges have continued to allow Heller Ehrman and other habeas counsel to travel to Guantanamo and meet with clients." Petr's Mot. at 4-5 & n.2 (citing two protective orders entered in other Guantanamo detainee habeas cases). Again, respondents have no objection to Heller Ehrman traveling to Guantanamo and meeting with their clients. The point, rather, is that any such visits must take place under an appropriate protective order entered in a jurisdictionally legitimate case, i.e., petitioner's pending DTA case. The two orders petitioners cite entering protective orders in other Guantanamo detainee habeas cases in November 2006 are no precedent for the relief petitioners presently seek in this case, because those orders were both entered prior to the D.C. Circuit's February 20, 2007 decision in Boumediene and its July 20, 2007 adoption of a protective order for DTA cases in Bismullah.[12] Curiously, petitioners fail to bring to the Court's attention two more recent orders in cases brought by Heller Ehrman with a procedural posture similar to this one, in which the court denied substantially identical "emergency" motions for entry of a protective order.[13]

---

detainee," DTA Protective Order ¶ 3.I, reprinted in Bismullah, 501 F.3d at 196.

[12] Moreover, the detainees in the two cases petitioners cite did not have simultaneous DTA cases pending in which the protective order could have been entered and counsel access afforded, as does the instant petitioner.

[13] See Order dated Feb. 5, 2008 in Al Yazidi v. Bush, Civ. A. No. 07-2337 (HHK) (attached hereto as Ex. B); Order dated Feb. 5, 2008 in Al Shubati v. Bush, Civ. A. No. 07-2338 (HHK) (attached hereto as Ex. C). Counsel have moved for reconsideration of these orders.

## CONCLUSION

For the reasons stated above, petitioners' motion for entry of the <u>In re Guantanamo Detainee Cases</u> protective order in this case should be denied. A proposed order is attached.

Dated: April 10, 2008

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

 /s/ Robert J. Katerberg
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar 347518)
TERRY M. HENRY
JAMES J. SCHWARTZ
JEAN LIN
ROBERT J. KATERBERG
ANDREW I. WARDEN (IN Bar 23840-49)
NICHOLAS A. OLDHAM
JAMES C. LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 616-8298
Fax:  (202) 616-8460

Attorneys for Respondents

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULRAHMAN MUHAMMAD SALEH NASSER, et al., )<br>)<br>Petitioners/Plaintiffs, )<br>)<br>v. )<br>)<br>GEORGE W. BUSH, et al., )<br>)<br>)<br>Respondents/Defendants. ) | Civ. A. No. 07-1710 (RBW) |

**[PROPOSED] ORDER**

Before the Court is Petitioners' Emergency Motion to Enter the November 8, 2004 Amended Protective Order from In re Guantanamo Bay Detainee Cases (dkt. no. 9). Upon consideration of the motion, the opposition thereto, any reply, and the record of this case, it is hereby

**ORDERED** that Petitioners' Motion is DENIED.

**SO ORDERED** this _____ day of _____, 2008.

_____
REGGIE B. WALTON
United States District Judge

# EXHIBIT A

FILED WITH THE
COURT SECURITY OFFICER
CSO: _____
DATE: 1/22/08

No.: 08-1042

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Abdulrahman Muhammad Saleh Nasser,

by his next friend,

Muhammad Muhammad Saleh Nasser,

                        Petitioners,

v.

Robert M. Gates, Secretary of Defense,

                        Respondent.


## PETITION FOR REVIEW UNDER DETAINEE TREATMENT ACT OF 2005

BRENT N. RUSHFORTH (DC 331074)
KIT A. PIERSON (DC 398123)
SARAH B. POJANOWSKI (DC 502036)
JENNY WORKMAN (DC 502584)
ELIZABETH S. ARORA
JANET E. HAWS
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036-3001
Telephone: +1 (202) 912-2000
Facsimile: +1 (202) 912-2020

SHAYANA KADIDAL (DC 49512)
PARDISS KEBRIAEI (DC 51395)
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: +1 (212) 614-6439
Fax: +1 (212) 614-6499

Attorneys for Petitioner
Abdulrahman Muhammad Saleh Nasser

ISN 115

Petitioner Abdulrahman Muhammad Saleh Nasser hereby petitions the Court under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, § 1005(e)(2), 119 Stat. 2680 (Dec. 30, 2005), for review of the Combatant Status Review Tribunal decision designating him an enemy combatant, and of the Order of the Director, Combatant Status Review Tribunals, concurring in that designation.

January 22, 2008                         Respectfully submitted,

                                         HELLER EHRMAN LLP

                                         By _____
                                         Brent N. Rushforth (Bar No. 331074)
                                         Kit A. Pierson (Bar No. 398123)
                                         Sarah B. Pojanowski (Bar No. 502036)
                                         Jenny Workman (Bar No. 502584)
                                         Elizabeth S. Arora
                                         Janet E. Haws

                                         Petitioner
                                         ABDULRAHMAN MUHAMMAD SALEH NASSER

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served on the following person by submitting it to the Court Security Office, this 22nd day of January, 2008:

**Robert M. Gates**
SECRETARY, U.S. DEP'T OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301-1000

By _/s/ Deborah Raichelson_
Deborah Raichelson
Heller Ehrman LLP

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RIDAH BIN SALEH AL YAZIDI,<br><br>Detainee,<br><br>SAMI AL HAJJ, as Next Friend of<br>RIDAH BIN SALEH AL YAZIDI,<br><br>Petitioners/Plaintiffs,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>Defendants. | Civil Action 07-2337 (HHK) |

**ORDER**

Before the court is petitioner's "Amended Emergency Motion to Enter the November 8, 2004 Amended Protective Order From *In Re Guantanamo Bay Detainees Cases*" [#11]. Upon consideration of the motion, the opposition thereto and the record of this case, the court concludes that the motion should be denied. Accordingly, it is this 5th day of February 2008, hereby

**ORDERED** that petitioner's motion is **DENIED**.

Henry H. Kennedy, Jr.
United States District Judge

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDURRAHMAN ABDALLAH ALI MAHMOUD AL SHUBATI,<br><br>Detainee,<br><br>ABDULLAH ALI MAHMOUD AL SHUBATI, as Next Friend of ABDURRAHMAN ABDALLAH ALI MAHMOUD AL SHUBATI,<br><br>Petitioners/Plaintiffs,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>Defendants. | Civil Action 07-2338 (HHK) |

ORDER

Before the court is petitioner's "Amended Emergency Motion to Enter the November 8, 2004 Amended Protective Order From *In Re Guantanamo Bay Detainees Cases*" [#11]. Upon consideration of the motion, the opposition thereto and the record of this case, the court concludes that the motion should be denied. Accordingly, it is this 5th day of February 2008, hereby

**ORDERED** that petitioner's motion is **DENIED**.

                                                      Henry H. Kennedy, Jr.
                                                      United States District Judge